**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARY HORSMON and | ) | |
| FRED HORSMON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 11-1050 |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| ZIMMER HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

## I.   MEMORANDUM

Pending before the Court is Defendants Zimmer Holdings, Inc., Zimmer Inc., and

Zimmer US, Inc.'s Motion to Partially Dismiss Plaintiffs' Complaint (Doc. 31).  For the reasons

stated herein, the Court will grant Defendants' motion to dismiss.

## BACKGROUND

### A.  Factual Background

On May 16, 2006, Plaintiff Mary Horsmon had a total hip replacement whereby her right

hip joint was replaced with implant components designed, manufactured, and sold by

Defendants.  1st Am. Compl. ¶¶ 14-15 (Doc. 29).  Ms. Horsmon later began to experience pain

in her right hip.  Id. at ¶ 16.  Sometime in 2009, an X-ray revealed that the screw holding Ms.

Horsmon's hip prosthesis in place was broken, and that the hip implant system had shifted from

its original position.  Id. at ¶ 17.  In September 2009, Ms. Horsmon underwent a revision of her

total hip replacement, in which her doctor removed the broken screw and replaced several

components of the hip implant.  Id. at ¶ 18.  Post-operative X-rays indicated that a portion of the

broken screw remained in Ms. Horsmon's pelvis, and a subsequent pathology report revealed a

3.0 cm defect in the original liner that was used during the May 2006 hip replacement.  Id. at ¶ 19.

Plaintiffs allege that Defendants' conduct caused Ms. Horsmon to suffer various injuries, including being forced to undergo a second major surgical procedure, permanent injury to her hip, and severe pain and discomfort.  Id. at ¶ 20.

### B. Procedural Background

On February 22, 2011, Plaintiffs commenced this action in the Court of Common Pleas of Allegheny County, by filing a Praecipe for Writ of Summons (Doc. 1-3).  Plaintiffs asserted five causes of action:  negligence (Count I); strict liability (Count II); breach of implied warranties (Count III); breach of express warranties (Count IV); and loss of consortium (Count V).  See Compl. (Doc. 1-2).  Defendants removed this action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and filed a motion to dismiss (Doc. 12) Counts II, III and IV of Plaintiffs' complaint.  This Court found that Counts II and III were barred by Pennsylvania law and dismissed those counts with prejudice.  This Court dismissed Count IV without prejudice for failure to state a claim.

Plaintiffs filed an amended complaint (Doc. 29), asserting three causes of action: negligence (Count I); breach of express warranties (Count II); and loss of consortium (Count III).[1]  Defendants filed the currently pending motion to dismiss (Doc. 31), asserting that the breach of express warranties claim (Count II) should be dismissed as barred by the statute of limitations.  Defendants further argue that even if the breach of express warranties claim is not barred by the statute of limitations, Plaintiffs have failed to allege sufficient facts to state a claim

---

[1]    Plaintiff Fred Horsmon is Ms. Horsmon's husband.  See 1st Am. Compl. ¶ 36 (Doc. 29). Counts I and II are brought by Ms. Horsmon, and Count III is brought by Mr. Horsmon.

for breach of express warranties.  Finally, Defendants assert that Count III should be limited to the extent it depends on the breach of express warranties theory asserted in Count II.

## ANALYSIS

### A. Statute of Limitations

Defendants assert that Plaintiff Mary Horsmon's claim for breach of express warranties is barred by the applicable statute of limitations.  Plaintiffs assert that Defendants waived the statute of limitations as an affirmative defense.  Plaintiffs further assert that their claim is timely.

#### 1. Waiver

Plaintiffs assert that Defendants waived the statute of limitations defense by failing to raise it in their first motion to dismiss (Doc. 12).  "Affirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy.  If a party has a successful affirmative defense, raising that defense as early as possible, and permitting a court to rule on it, may terminate the proceedings at that point without wasting precious legal and judicial resources."  Robinson v. Johnson, 313 F.3d 128, 137 (3d Cir. 2002).

Defendants raised the statute of limitations as a defense in their Answer to Plaintiffs' original complaint.  Answer 13 (Doc. 14).  Further, omission of a statute of limitations defense from a motion to dismiss does not necessarily waive the defense.  See Robinson, 313 F.3d at 138-39.  Defendants, therefore, have not waived their statute of limitations defense.

#### 2. Accrual of Plaintiffs' Cause of Action

"In the ordinary case, a breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered."  Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div., 625 A.2d 1172, 1174 (Pa. 1993) (applying 13 Pa. C.S. § 2725).  Where a "warranty explicitly extends to future performance of the goods and discovery of the

breach must await the time of such performance," however, the cause of action does not accrue until "the breach is or should have been discovered." 13 Pa. C.S. § 2725.

Whether Plaintiff's breach of express warranties claims was timely depends on whether Defendants made an express warranty that "explicitly extends to future performance and discovery of the breach must await the time of such performance." Id. Plaintiffs commenced this action in the Court of Common Pleas of Allegheny County, by filing a Praecipe for Writ of Summons on February 22, 2011. If Defendants made an express warranty that "explicitly extends to future performance and discovery of the breach must await the time of such performance," then the cause of action did not accrue until 2009, when Plaintiffs discovered the alleged breach of warranty, and the claim is timely. Id. Otherwise, the breach of express warranties claim accrued upon "tender of delivery," or May 16, 2006, when Plaintiff had her total hip replacement surgery, and the claim was untimely. Id.

Plaintiffs allege that Defendants made express warranties with numerous "affirmations and promises" with respect to the hip implant components at issue in this action:

  a. Defendants' hip implant was 'indicated for primary or revision surgery for rehabilitating hips';

  b. Defendants had performed the necessary safety and efficacy testing before promoting their implants for use in the hip;

  c. Testing had shown that the use of Defendants' hip implants was safe and effective;

  d. Defendants' hip implant could be held in place by a single screw;

  e. Defendants' screws could withstand the forces involved in a total hip replacement;

  f. Defendants' hip implant contained 'interconnecting pores [to] enable rapid and extensive bone formation and ingrowth to achieve long-term fixation";

  g. Defendants' hip implant contained materials meant to 'facilitate bone integration, bone remodeling, and vascularization';

h. Defendants' hip implant contained materials that 'create an initial scratch fit and facilitates the long-term biologic attachment of orthopedic implants via bone ingrowth';

i. Defendants' hip implant possessed a high co-efficient of friction and material properties that facilitate 'direct bone apposition to increase initial stability at implantation';

j. Defendants' hip implant possessed properties that 'allow iseoelastic [sic] load sharing, resulting in less stress shielding around the implant';

k. Defendants' hip implant was designed to be 'more resistant to abrasion';

l. Defendants' hip implant was designed to reduce oxidation in that it utilized 'high-dose electron-beam radiation . . . [which] fully crosslinks broken molecular polyethylene chains, leaving virtually no free radicals to promote oxidation';

m. Defendants' hip implant utilizes a 'proprietary process' that ensures 'optimal wear resistance';

n. Defendants' hip implant significantly reduced debris particles generated by wear by 10-fold, 'an average 89%', and that the in vitro wear rate was 'near zero' and 'lower than half of its competitors';

o. Defendants' hip implants contain materials that meet 'all of the mechanical property requirements of the ASTM and ISO standards';

p. Defendants' hip implants contained materials with years of clinical success and have been endorsed by the medical/scientific community for hip implants;

q. Defendants' hip implant would not fail;

r. The benefits associated with the use of Defendants' hip implant outweighed the risk of post-operative complications and conditions, including failure and continued pain; and

s. Defendants had adequately instructed and warned Plaintiff and/or Plaintiff's physician of the potential risks associated with their hip implant.

1st Am. Compl. ¶ 30 (Doc. 29).

An analysis of whether a "warranty 'explicitly' extends to future performance must focus on the express language of that warranty." Nationwide Ins., 625 A.2d at 1175. "[T]he focus of § 2725 is not on *what* is promised, but on the duration of the promise-i.e., the period to which the

promise extends." Id. at 1176. None of the affirmations and promises alleged by Plaintiffs refers to any "period to which the promise extends," and none of them suggests that a warranty is being extended to future performance of the goods. The alleged warranties, therefore, do not "explicitly extend to future performance." Id.; see also Zawadski v. Ethicon, Inc., No. Civ. 92-6453, 1994 WL 77350, at *5 (E.D. Pa. Mar. 11, 1994) (finding "representation of 'lasting strength,' without reference to a specific time period" not "sufficiently explicit to extend forward the alleged warranties")

Plaintiffs argue that "[t]hese warranties contemplate behavior of the implant components over a prolonged period of time that extends significantly beyond the date of delivery and/or implantation." Pls.' Br. 7 (Doc. 35). But even if Plaintiff were correct that the alleged warranties "contemplate" future performance of the hip implant, nearly all warranties contain "promises regarding the manner in which the goods will perform after tender of delivery." Patton v. Mack Trucks, Inc., 519 A.2d 959, 964 (Pa. Super. Ct. 1986). Allowing a warranty to extend to future performance merely because it contains such promises "would allow the exception to swallow the rule." Id. For a warranty to "explicitly extend" to future performance, "parties must make a 'clear and unambiguous expression' of their intent to extend warranties to extend to future performance." Id. Here, none of the alleged affirmations and promises includes a "clear and unambiguous expression" of an intent to extend warranties to future performance of the hip implant.

Plaintiffs rely primarily on a plurality opinion from Cucchi v. Rollins Protective Services Co., 574 A.2d 565 (Pa. 1990). In Cucchi, a plurality of the Pennsylvania Supreme Court explained that: "While the term 'explicit' might seem to eliminate the possibility of implied prospective warranties, the better view is that warranties explicitly extending to future

6

performance may be both express and implied by content and circumstances sufficiently specific as to unequivocally refer to future performance." Id. at 573. Without a majority opinion, Cucchi has limited precedential value. See Keblish v. Thomas Equip., Ltd., 660 A.2d 38, 40 n.1 (Pa. 1995) ("Because there was no clear majority supporting any given view, the precedential authority of Cucchi is limited to the facts of that case."); Zawadski, 1994 WL 77350, at *7 ("Justice Larsen's plurality opinion in Cucchi is squarely in conflict with a plain reading of section 2725.").

Even considering the plurality opinion of Cucchi as persuasive authority, it is distinguishable from Plaintiffs' case here. In Cucchi, a plurality of the court found that a monthly lease of a home security system extended a warranty to provide "safety" to future performance. The plurality emphasized that the particular characteristics of a monthly lease arrangement supported an extension of warranties to future performance:

> Indeed, the very nature of a conventional lease of goods with monthly payments by the lessee and the continuous obligation of the lessor to service and repair, especially where (as here) the goods are to be returned in working order to the lessor at the end of the lease, supports a finding that the future performance of the goods has been warranted, and that the goods will continue to operate and remain fit for their ordinary and intended use.

Cucchi, 574 A.2d at 574. Here, Plaintiffs did not lease the hip implant at issue. Plaintiffs do not allege that Defendants had an obligation to service and repair Plaintiff's hip implant. None of Plaintiffs' allegations suggests any "content and circumstances sufficiently specific as to unequivocally refer to future performance." Id. at 573. The plurality opinion in Cucchi, therefore, does not support Plaintiffs' position. See Zawadski, 1994 WL 77350, at *7 ("The Cucchi plurality opinion can thus be read as applying solely to leasing transactions, where the parties 'presumably barter for the future performance of the goods,' thus leaving undisturbed the

law applicable to the single sale of an item announced in <u>Patton v. Mack Trucks, Inc.</u>" (quoting <u>Cucchi</u>, 574 A.2d at 574)).

Plaintiffs also rely on <u>Perry v. Augustine</u>, 37 Pa. D. & C. 2d 416 (Pa. Ct. Common Pleas Mercer Cnty. 1965). In <u>Perry</u>, the court found that a warranty that a heating system would "be able to heat at 75° inside at a -20° outside temp." extended to future performance because "[d]iscovery of a breach of that kind of warranty in this climate would necessarily have to await winter weather." <u>Id.</u> at 417-18. But the Pennsylvania Superior Court has discounted the rationale of <u>Perry</u> as "unpersuasive." <u>Patton</u>, 519 A.2d at 965. The Superior Court explicitly rejected "the proposition that a warranty necessarily extends to future performance when discovery of a breach must await some prospective event." <u>Id.</u> <u>Perry</u>, therefore, does not support Plaintiff's position.

For the foregoing reasons, the express warranties allegedly made by Defendants do not "explicitly extend to future performance." Plaintiffs' claim for breach of express warranties, therefore, accrued upon tender of delivery of Plaintiffs' hip implant on May 16, 2006. <u>See</u> 13 Pa. C.S. § 2725. Plaintiff's claim is barred by the applicable four-year statute of limitations. <u>See</u> <u>id.</u> Because the Court finds that Plaintiffs' claim for breach of express warranties is barred by the statute of limitations, the Court need not consider Defendants' argument that Plaintiff has failed to allege sufficient facts to suggest a plausible claim for breach of express warranties.

## CONCLUSION

For all of the reasons stated above, Defendants Zimmer Holdings, Inc., Zimmer Inc., and Zimmer US, Inc.'s Motion to Partially Dismiss Plaintiffs' First Amended Complaint (Doc. 31) is granted. Because Plaintiff Mary Horsmon's breach of express warranties claim (Count II) is barred by the applicable statute of limitations, amendment of Plaintiffs' First Amended Complaint would be futile. Count II, therefore, is dismissed with prejudice. <u>See</u> <u>Phillips v.</u>

<u>Cnty. of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint." (citing <u>Shane v. Fauver</u>, 213 F.3d 113, 116 (3d Cir. 2000))).

To the extent Plaintiff Fred Horsmon's claim for loss of consortium (Count III) is derivative of Count II, Count III is limited accordingly.

## II.    <u>ORDER</u>

For the reasons stated above, the Court hereby **ORDERS** that Defendants Zimmer Holdings, Inc., Zimmer Inc., and Zimmer US, Inc.'s Motion to Partially Dismiss Plaintiffs' First Amended Complaint (Doc. 31) is **GRANTED**.  Plaintiff Mary Horsmon's claim for breach of express warranties (Count II) is **DISMISSED WITH PREJUDICE**.

To the extent Plaintiff Fred Horsmon's claim for loss of consortium (Count III) is derivative of Count II, Count III is limited accordingly.

**IT IS SO ORDERED**.

<div style="margin-left:40%">

s/ Cathy Bissoon
Cathy Bissoon
United States District Judge
</div>

February 8, 2012

cc (via e-mail):

All counsel of record.

9